# ROSE v. SMITH et al., Appellants.

### Division One, February 19, 1902.

1. **Homestead:** INSOLVENCY: SALE OR MORTGAGE. The head of a family whether he be solvent or insolvent, may deed his homestead to his wife and she may deed it to her brother, and his creditors can not impeach the transfer, as having been made in fraud of their rights, for having no claim upon the homestead no transfer thereof can impair their rights. Such transfer carries a good title, no matter what motive actuated it.

2. ————: SALE: PART INVESTMENT OF PROCEEDS. A homesteader may sell one homestead and with the proceeds acquire another, and the new homestead will be exempt from execution as fully as the former one. And where a part only of the proceeds of such homestead was invested in such new homestead, it is *pro tanto* exempt from execution, and, hence, a judgment which seeks to subject the whole to execution, can not stand.

3. ————: ————: REINVESTMENT: MIXING PROCEEDS. The homesteader, by one contract, as an entirety, agreed to buy a homestead in town for $1,100, and a livery stable for $1,370, and then mortgaged his country homestead for $1,500, and immediately moved into the town house, and paid for the livery stable, and with the remaining $130 and money realized from the sale of his stock and farming implements paid the purchase price of the town house. *Held,* that, the contract for the purchase of the two being an entirety, a court of equity will not subject the new homestead to the payment of the balance due after foreclosure of the mortgage on the country homestead, but will hold that the new homestead was acquired by the proceeds arising from the sale of the former one.

4. ————: MORTGAGE: EQUITY OF REDEMPTION: NEW HOMESTEAD. Where the mortgagor abandons his occupancy of the land mortgaged, and establishes a new homestead in other property, it will not be held, on the theory that a deed of trust is only a lien and not a sale, that the mortgagor still has a homestead in the equity of redemption. The sale of the old homestead and the investment of the proceeds in the new, may be by mortgage or deed of trust on the old.

Vol 167 mo—6

Appeal from Ralls Circuit Court.—*Hon. D. H. Eby,* Judge.

REVERSED.

*J. D. Hostetter* for appellants.

(1)   No disposition a debtor may make of a homestead or other exempt property can be fraudulent as to creditors. It is no concern of creditors what he does with the exempt property.   The creditor has no claim thereon and a general judgment constitutes no lien thereon, and a sale of the same conveys a good title free from the claims of the grantor's creditors whether reduced to judgment or not.   Vogler v. Montgomery, 54 Mo. 577; State v. Diveling, 66 Mo. 375; Davis v. Land, 88 Mo. 436; Holland v. Kreider, 86 Mo. 59; Kendall v. Powers, 96 Mo. 142; Bank v. Guthrey, 127 Mo. 193; Creech v. Childers, 156 Mo. 338; Brewing Ass'n v. Howard, 150 Mo. 450; Buck v. Ashbrook, 59 Mo. 200; Bartels v. Kinnenger, 144 Mo. 370.   (2)   Proceeds of one homestead put into another, and followed by an abandonment of the first one, and an occupancy of the second one, makes the second homestead exempt against all debts not older than the date of the record of the deed to the first one or the acquisition of title by inheritance thereto.   Sec. 3623, R. S. 1899; Bechman v. Meyers, 75 Mo. 333; Farra v. Quigly, 57 Mo. 284; Burnes v. Bangert, 92 Mo. 167; Smith v. Enos, 91 Mo. 579; Creath v. Dale, 84 Mo. 349; Goode v. Lewis, 118 Mo. 357; Macke v. Byrd, 131 Mo. 682.   (3)   The homestead rights of Smith and his wife are in no manner affected by his conveyance of the Center residence to her.   Such a conveyance being of the homestead could not be fraudulent, neither would it in the least alter their homestead rights as against the plaintiff's debt.   A husband may have a homestead in real estate, the title to which is vested in the wife. Casler v. Gray, 159 Mo. 588; Kendall v. Powers, 96 Mo.

142; Richter v. Bohnsack, 144 Mo. 516; Bartels v. Kinnenger, supra.    (4)    It may be argued, on behalf of respondent, that because the identical dollars which were realized out of the $1,500 incumbrance placed on their first homestead were not used in paying for the second one, therefore it was not procured with the proceeds of the first.    Still, in conformity with the general tendency of the courts, the same liberal construction in favor of the homesteader should be given in this case.    Without the $1,500 derived from the deed of trust conveyance of the first homestead the second one could not have been paid for.    The fact that the homesteader may have used other money with which to pay for his new homestead instead of the identical money borrowed from the incumbrance placed on the first one, was simply a matter of convenience, and does not alter the fact that he abandoned the first for the second. There is no question but that a deed of trust is such a disposition of the homestead as is contemplated by the statute, section 3623, Revised Statutes 1899.    The giving of a deed of trust on the homestead cuts off all rights of the grantors in such conveyance against a purchaser under a trustee's sale thereunder.    Markwell v. Markwell, 157 Mo. 326; Kopp v. Blessing, 121 Mo. 391.

*Roy & Hays* and *Ed. L. Alford* for respondent.

(1)    The execution by Smith and wife of the deed of trust on their interest in the Pike county farm was not a "sale or other disposition of such prior homestead" as provided by section 3623, Revised Statutes 1899.    Said deed of trust was to secure a note for $1,500 due one year after the date thereof. The condition thereof was not broken until one year after the execution thereof.    Regardless of whether the $1,500 debt was the full value of said homestead, the defendants, after the execution of the deed of trust, were still owners of a homestead in said farm as before.    Dickerson v. Bridges, 147 Mo.

235; Masterson v. Railroad, 72 Mo. 342; Woods v. Hilde-
brand, 46 Mo. 284; Logan v. Railroad, 43 Mo. App. 75; Fisher
v. Johnson, 51 Mo. App. 162.   It has been repeatedly held in
this State that after the execution of a mortgage on the home-
stead, the mortgagee is entitled to a homestead in the equity ·
of redemption, and it is not lost until a foreclosure of the
mortgage.   State ex rel. v. Neason, 88 Mo. 222; Elstroth
v. Young, 83 Mo. App. 253; Pearman v. McKee, 79 Mo.
App. 210; Meyer v. Nickerson, 101 Mo. 184; Casebolt v.
Donaldson, 67 Mo. 308.   As the defendants, after the execu-
tion of the deed of trust, still had a homestead in the farm,
they could not have a homestead in the money borrowed from
Rose or in any property purchased with it.   (2)   The $1,500
borrowed from Rose, for which the deed of trust was given,
was not used by the defendants to pay for the property in con-
troversy.   The defendants say that $1,100 of it was used for
that purpose, but they are thoroughly contradicted by other
evidence, as follows.   The books of the bank at Curryville
show deposit of $1,500 to credit of Smith on the day of execu-
tion of deed of trust.   Briggs says that Smith paid him for
a livery stable with a check on Bank of Curryville for $1,370
in addition to $5 cash previously paid.   This payment was
made three or four weeks before the deed for the house in
controversy was made to the Smiths.   The statement of de-
fendant Smith's account with the Bank of Curryville shows
that he had no other money in that bank at the time of the
purchase of the livery stable except the $1,500 borrowed from
Rose.   The house and lot in controversy were purchased on
May 9, 1892, several days after all the money in Bank of
Curryville had been paid out by Smith, so that not a dollar of
the $1,500 went into the house and lot.   This fact is virtually
conceded by appellant, and the contention is made that a
liberal construction of the statute will support the claim of
homestead, in this case.   Such would not be a liberal construc-

tion but a repudiation of the statute.   Casebolt v. Donaldson, supra.

MARSHALL, J.—In 1892, E. C. Smith and wife owned four-sevenths interest in two hundred and five acres of land in Pike county.   The wife owned one-seventh by inheritance, and the husband three-sevenths by purchase.   The value of their interest was $1,500.   It was the homestead of the family.   Smith and wife mortgaged the homestead to the plaintiff for $1,500.   Then Smith purchased a livery stable and a house in the town of Center, Ralls county.   The house was worth $600 to $1,000, and stood upon a lot 252 feet by 90 feet.   The contract for the livery stable and the house was an entirety, and five dollars earnest money was paid to bind it.   The livery stable was priced at $1,375, and the house at $1,100.   Smith stated to Rose that he was borrowing the $1,500 to buy the livery stable.   The loan was made on April 2, 1892.   On April 5, Smith paid $1,370 for the livery stable and received a deed for it.   The five dollars earnest money was applied to make up the difference between the $1,370 paid, and the $1,375, the agreed price.   This $1,370 was paid out of the $1,500 borrowed.   This left $130 of the $1,500 so borrowed.   To this $130 Smith added the money he received from the sale of some stock and farm implements, and on May 9, 1892, he paid for and received a deed to the house. Smith thereupon abandoned his homestead on the farm and moved into the town house and established his homestead thereon, and has continued to use and occupy it ever since. In 1894, Smith conveyed the new homestead to his wife.   In 1896, the $1,500 loan on the farm having matured and Smith being unable to pay it, the plaintiff foreclosed the deed of trust and became the purchaser for $1,250.   After crediting that sum on the debt of $1,500 and the interest due, he brought suit for the deficit and obtained a judgment for $700.   Under this judgment, he levied upon the new homestead, had it sold

under execution and became the purchaser for $5. The day before the judgment for the deficit was rendered, Smith and wife sold the new property to Mrs. Smith's brother, the defendant Ogle. The consideration was two hundred dollars that Ogle had loaned his sister, Mrs. Smith, and four hundred and fifty dollars in cash. The plaintiff then brought this proceeding in equity and asked that the deeds from Smith to his wife and from Mrs. Smith to Ogle be declared fraudulent, and be set aside, and for possession of the property, etc. The circuit court rendered judgment as prayed, and the defendants appealed.

## I.

The head of a family may sell or mortgage his homestead, whether he be solvent or insolvent, and his creditors can not impeach the sale, for having no claim upon the homestead their rights are not impaired. [Bank v. Guthrey, 127 Mo. l. c. 193; Creech v. Childers, 156 Mo. 338; Brewing Association v. Howard, 150 Mo. l. c. 450.]

So a homesteader can dispose of one homestead and, with the proceeds, acquire another, and the new homestead will be exempt from execution as fully as the old one was. [Section 3623, R. S. 1899; Smith v. Enos, 91 Mo. 579; Goode v. Lewis, 118 Mo. 357; Macke v. Byrd, 131 Mo. 682; New Madrid Banking Co. v. Brown, 165 Mo. 32.]

But while the plaintiff admits that such is the law, he denies that it covers this case, for two reasons: first, because the identical proceeds of the sale of the old homestead were not used to buy the new homestead, but $1,370 of such $1,500 was invested in the livery stable; and, second, because Smith never sold the old homestead; he only mortgaged it, and a mortgage is only a lien and not a sale, and therefore Smith had a homestead in the equity of redemption.

It is true that the evidence shows that $1,370 of the

$1,500 was invested in the livery stable. But the evidence shows that the $130 balance of the $1,500 was invested in the new homestead. Therefore, *pro tanto,* Smith had that much of a homestead in the town house, and this action must fail because it seeks to set aside the whole conveyances and to put the plaintiff into possession of the whole premises. So that the judgment of the circuit court can not stand.

But complete justice would not be done by stopping here.

The evidence shows that the contract for the purchase of the livery stable and the town residence was an entirety. This being true, if Smith had added to the fifteen hundred dollars borrowed on the old homestead, the amount he realized from the sale of the stock and farm implements, and had deposited both amounts in the bank together, and if the livery stable and town house had been conveyed to him by the same deed, and he had given one check for $2,475, the agreed price for the two, there would be no doubt that any court would have treated the new homestead as purchased with the proceeds of the sale of the old. The only difference between this and the case at bar is that the proceeds of the sale of the old homestead and of the farm implements were only mixed *pro tanto* and not entirely, and that the payments for the stable and the house were not made at the same time, by the same check. The contract for the purchase of the two was, however, an entirety. No just or logical distinction between the case assumed and the case at bar can be drawn so far as the rights of the plaintiff are concerned. He can not be heard, in equity, to say, "If the one course of procedure had been adopted, I would have had no right to subject the new homestead to the payment of my debt, but because of the difference in the form of procedure in the other case a right has accrued to me to so subject the new homestead." It is a rule of equity as old as its establishment that courts of equity look to the substance and not to the shadow, look to the right and not to the form any transaction may have taken. So regarded,

there is no equity in the plaintiff's contention and the new homestead must be treated as acquired with the proceeds of the sale of the old.

The fact that, even under the plaintiff's contention, at least, a part of the stock and farm implements were exempt from execution, and hence, likewise, were the proceeds of their sale, and that such proceeds, added to the balance of $130 remaining of the $1,500, were used to buy the town house, and hence that house was for this reason exempt, has not been overlooked.

The second contention of the plaintiff is true in the abstract, but has no application to this case. A mortgage creates a lien, and the mortgagor may have a homestead in the equity of redemption. But in this case the mortgagor abandoned his occupancy of the land mortgaged and therefore lost his right to claim a homestead in the equity of redemption. Not only this but he actually established a new homestead in the town house, and as he could not have two homesteads at the same time, this was an abandonment, in law, of the prior homestead. Again, while primarily a mortgage, or a deed of trust, creates only a lien, it may effectually transfer the title also, if the lien is not discharged by the payment of the debt. At common law, a mortgage was a pledge to be defeated upon the happening of a subsequent condition, and if the condition was not fulfilled, the pledge became absolute, the pledgee was entitled to possession, as he already had title by the terms of the mortgage. A deed of trust places the title in the trustee instead of in the beneficiary as a mortgage does. But the title in the trustee may be divested out of him by a sale under the deed of trust and the title in this way be transferred from the original debtor or grantor in the deed of trust to the creditor, as was done in this case, or some third person. So that a homestead may be sold as effectually by means of a mortgage or deed of trust as by a direct conveyance. And the proceeds of a sale of a homestead by mortgage

or deed of trust, that are invested in a new homestead are just as much within the spirit and reason of the statute and just as fully protected by the statute, as if the old·homestead had been sold outright and the proceeds re-invested in the new homestead. There is therefore no merit or equity in the defendant's second contention.

## II.

The town house being a homestead, the conveyance by Smith to his wife in 1894 and by Mrs. Smith to Ogle in 1898, carried a good title, no matter what motive actuated the transfer. [Bank v. Guthrey, 127 Mo. 189.]

The judgment of the circuit court is reversed, and as the plaintiff can never recover in this action, the cause is not remanded. All concur.